766 A.2d 1066

CARMELLA R. LAFAGE, INDIVIDUALLY; CARMELLA R. LAF-AGE, AS EXECUTRIX OF THE ESTATE OF RICHARD A. LAF-AGE, DECEASED, PLAINTIFF, v. DEVENDRA JANI, M.D.; DI-ANA MATHIAS, R.N.; DIANE KLEIN, R.N.; KAREN MARTIN, R.N.; JOHN HOBSON, R.N.; D.L. SEALS, R.N. AND VICTORIA MILLS, R.N.; DEFENDANTS-APPELLANTS AND CROSS-RE-SPONDENTS, AND JANE DOE, R.N. BEING A NAME/NAMES FICTITIOUS (NO. 1 THROUGH NO. 6), DEFENDANTS, v. ANGE-LO J. FALCIANI, PA AND ANGELO J. FALCIANI, ESQUIRE, INTERVENORS-RESPONDENTS AND CROSS APPELLANTS.

Argued September 11, 2000—Decided February 22, 2001.

414

*Timothy P. O'Brien* argued the cause for appellants and cross-respondents Diana Mathias, R.N.; Diane Klein, R.N.; Karen Martin, R.N.; John Hobson, R.N.; D.L. Seals, R.N.; Victoria Mills, R.N.; (*Paarz, Master, Koernig, Crammer, O'Brien, Bishop & Horn,* attorneys; *Mr. O'Brien* and *Mary Ann C. O'Brien,* on the letter briefs).

*Stacy L. Moore, Jr.,* argued the cause for appellant and cross-respondent Devendra Jani, M.D. (*Parker McCay & Criscuolo,* attorneys).

*William J. Martin* argued the cause for intervenors-respondents and cross-appellants (*Martin, Gunn & Martin,* attorneys).

The opinion of the Court was delivered by

COLEMAN, J.

This is a medical malpractice-wrongful death case. The critical issue raised is whether our Wrongful Death Act, *N.J.S.A.* 2A:31–1 to –6, permits equitable tolling of its two-year statute of limitations for minors whose wrongful death claims were filed twenty-seven days late. The trial court held that the Wrongful Death Act permits such tolling. The Appellate Division declined to intervene on an interlocutory basis. We granted leave to appeal and hold that the Wrongful Death Act may be equitably tolled for minors. We do not reach the issue whether our discovery rule applies to Wrongful Death Act claims.

I.

Richard LaFage went to the Salem Hospital on March 6, 1995, complaining of extreme pain in his right shoulder and chest. The hospital diagnosed a pulled muscle and prescribed Percocet and other medication before sending him home. The next day, LaF-

age visited Dr. Salem, who also diagnosed a pulled muscle and prescribed medication, but LaFage continued to experience severe pain. LaFage returned to the hospital later that morning and was again diagnosed as suffering from a muscle pull. A nurse on duty told LaFage's wife that muscle pulls are painful and that LaFage was getting treatment for the pull. Later that day Mrs. LaFage gave the nurse a cup of LaFage's phlegm and asked why a muscle pull would cause the production of such phlegm. The nurse explained that phlegm sometimes resulted from the medication LaFage was taking, but that she would contact the doctor. That night LaFage's condition worsened, and he was transferred to the University of Pennsylvania Hospital where he was placed on a life-support system. He died two days later, on March 8, 1995.

LaFage is survived by his wife, Carmella LaFage, and three minor children between the ages of four and eight. Mrs. LaFage was three-months pregnant at the time of her husband's death. A few days after his death, Mrs. LaFage's father contacted Angelo Falciani, an attorney, regarding a possible malpractice suit. Mrs. LaFage met with Falciani on several occasions and was under the impression that he would handle the case and file a lawsuit on her behalf. In her testimony given during a *Lopez* discovery hearing, *Lopez v. Swyer*, 62 *N.J.* 267, 300 *A.2d* 563 (1973), Mrs. LaFage stated that she felt that the doctors, including defendant Dr. Devendra Jani, were negligent at the Salem Hospital. When asked why her father spoke to a lawyer, she responded that he did so because she thought that her husband had not received proper care and that her husband died as a result of somebody's negligence.

In addition to speaking to Falciani around March 13, 1995, Mrs. LaFage spoke with her cousin, Dr. Romano, on March 22, 1995. Dr. Romano informed her that he believed that she had an overwhelming case of malpractice against all of the health care providers, including the nurses, and explained why he thought the case was so strong.

A wrongful death and survivorship complaint was filed by Falciani on April 4, 1997, two years and twenty seven days after LaFage's death on March 8, 1995. In opposition to a motion to dismiss the complaint because it was filed more than two years after the date of death, Falciani argued that the statute of limitations should not commence to run until June 29, 1995, the date on which he received LaFage's autopsy report. The autopsy report indicated that the cause of death was a massive bacterial infection of unknown origin in LaFage's chest cavity. Falciani discussed the matter with many doctors, some of whom believed that medical malpractice existed, others of whom did not.

In response to Dr. Jani's motion to dismiss the complaint based on the statute of limitations, Falciani moved to intervene because he was now facing a legal malpractice claim. The trial court granted his application.

The trial court ultimately decided that the discovery rule could be applied to Wrongful Death Act claims. Based on evidence produced during the *Lopez* hearing, however, the trial court held that, even applying the discovery rule, the two-year statute of limitations barred Mrs. LaFage's wrongful death claim. The court found that although LaFage died on March 8, 1995, under the discovery rule the two years did not begin to run until March 22, 1995, when Mrs. LaFage spoke to Dr. Romano, who confirmed that malpractice was committed by all the health care providers. Thus, the trial court held that although the discovery rule applied under the reasoning of *Negron v. Llarena,* 156 *N.J.* 296, 716 *A.*2d 1158 (1998), Mrs. LaFage's wrongful death and survival claims against all defendants were barred because her April 4, 1997, complaint was filed more than two years after the causes of action accrued on March 22, 1995.

Concerning the wrongful death claims of LaFage's children, the trial court held that although there is no statutory tolling for minors pursuant to the Wrongful Death Act, *Negron* permits equitable tolling until the minors reach their eighteenth birthdays. The Survival Act claims of the children, however, were barred

because those claims belong to the estate and no distinction should be made between the children and the estate. The court reasoned that, notwithstanding the applicability of the discovery rule, the survivorship cause of action accrued on March 22, 1995, and the complaint was filed more than two years thereafter. Consequently, under the trial court's determinations, only the Wrongful Death Act claims on behalf of the minors were not dismissed.

## II.

Defendant nurses argue that there should be no tolling under the Wrongful Death Act and that the trial court misapplied *Negron*, which limited application of equitable principles to the doctrine of substantial compliance, a doctrine not involved in this case. They also maintain that the Wrongful Death Act, which contains a two-year statute of limitations without a tolling provision, reflects a legislative intent not to permit tolling for minors on either a statutory or equitable basis. They draw support from the general tolling statute, *N.J.S.A.* 2A:14–21, because claims under the Wrongful Death Act are not among the enumerated claims that statutorily permit tolling for minors.

Defendant Dr. Jani contends that the trial court acted inconsistently when it ruled that Mrs. LäFage's wrongful death claims are time-barred but that the wrongful death claims of the children are not. He also argues that the language in both the Wrongful Death Act and the general tolling statute, *N.J.S.A.* 2A:14–21, explicitly excludes tolling for minors: the former does so by stating that an action is viable only for two years, and the latter does so by listing a number of causes of action for which tolling is permitted, without including Wrongful Death Act claims. He maintains that, unlike tolling pursuant to *N.J.S.A.* 2A:14–21 of claims for personal injuries covered by *N.J.S.A.* 2A:14–2 where an injury has been suffered by a minor, the injury involved under the Wrongful Death Act has been suffered by someone other than the minor.

Intervenor Falciani contends that the discovery rule should apply to Wrongful Death Act claims, and that application of that rule requires a finding that the claims of Mrs. LaFage and those of the children were not time-barred. He also argues that minors should have the benefit of equitable tolling of wrongful death claims.

### A.

■ First, we address the contention that Mrs. LaFage's wrongful death claim should be subject to tolling based on a *Lopez*-type discovery rule. The current discovery rule is based largely on the language in our personal injury statute of limitations, *N.J.S.A.* 2A:14–2. It provides: "Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next *after the cause of any such action shall have accrued." Ibid.* (emphasis added). The Wrongful Death Act, in contrast, requires that: "Every action brought under this chapter shall be commenced *within 2 years after the death of the decedent, and not thereafter." N.J.S.A.* 2A:31–3 (emphasis added). Because we agree with the trial court's assessment of the record and its ultimate conclusion, that even if she could invoke the discovery rule Mrs. LaFage's wrongful death claim was untimely, we decline to address the broader question whether the discovery rule generally should be applicable to Wrongful Death Act claims. Under our discovery rule jurisprudence, she knew she had a basis for a wrongful death-medical malpractice claim, at the latest, on March 22, 1995, when she was so informed by Dr. Romano. The cause of action·accrued on that date. The complaint was not filed until April 7, 1997, which was beyond the period permitted by *N.J.S.A.* 2A:31–3.

### B.

■ Next, we address whether wrongful death claims should be tolled for minors. The Wrongful Death Act provides: "Every

action brought under this chapter shall be commenced within 2 years after the death of the decedent, and not thereafter." *N.J.S.A.* 2A:31–3. The Wrongful Death Act does not explicitly relax the two-year requirement, nor has this Court addressed any exception to the clear language of *N.J.S.A.* 2A:31–3 prior to our decision in *Negron.* In *Negron,* we observed that equitable tolling or the discovery rule "in appropriate circumstances . . . can be relevant in determining whether the statute of limitations [*N.J.S.A.* 2A:31–3] should be tolled." *Negron, supra,* 156 *N.J.* at 307, 716 *A.*2d 1158.

In *Negron,* the decedent, who was involved in an automobile accident and was treated at Christ Hospital in Jersey City, New Jersey, died on January 24, 1991, as a result of alleged medical malpractice at the hospital. The decedent's wife, who resided in New York, filed a wrongful death complaint against Christ Hospital on October 21, 1991, in the United States District Court for the Southern District of New York. On December 18, 1991, that court transferred the action to the United States District Court for the District of New Jersey. That court dismissed the action on November 28, 1994, for want of subject matter jurisdiction. A complaint was filed in the Superior Court of New Jersey on February 16, 1995, more than four years after the decedent's death. *Id.* at 298–99, 716 *A.*2d 1158. We concluded that the equitable doctrine of substantial compliance could be applied to a Wrongful Death Act claim and held that the timely filing of the original complaint with the New York district court substantially complied with *N.J.S.A.* 2A:31–3. *Id.* at 305–07, 716 *A.*2d 1158. We did not decide, however, whether the discovery rule or tolling for minors, both based on principles of equity, could be applied to Wrongful Death Act claims. *Id.* at 307, 716 *A.*2d 1158. We now decide the unanswered questions regarding infant tolling.

Historically, the Court has made a distinction between a procedural statute of limitations and a substantive one. A substantive statute of limitations is found in legislation creating a cause of action that did not exist at common law. *Id.* at 300, 716

A.2d 1158. With substantive statutes of limitations, where the time in which the action must be commenced expires, both the remedy and the right are barred. *Ibid.* A procedural statute of limitations, on the other hand, governs general causes of action, such as tort or contract actions, that were recognized under the common law. The running of a procedural statute of limitations bars only the remedy, not the right that existed at common law. *Ibid.* In addition, procedural statutes of limitations are not applied strictly and may be flexibly construed, subject to equitable principles. *Ibid.* Even substantive statutes, however, need not necessarily be construed rigidly. *Negron* confirmed that our "approach to substantive statutes of limitations has evolved to one that recognizes that their application depends on statutory interpretation focusing on legislative intent and purpose." *Id.* at 304, 716 A.2d 1158.

Support for *Negron* was found in *White v. Violent Crimes Compensation Bd.,* 76 *N.J.* 368, 388 A.2d 206 (1978), and *Gantes v. Kason Corp.,* 145 *N.J.* 478, 679 A.2d 106 (1996). In *White,* this Court acknowledged that the Criminal Injuries Compensation Act, *N.J.S.A.* 52:4B–1 to –33, and the Wrongful Death Act both contain substantive statutes of limitations. *White, supra,* 76 *N.J.* at 374–75, 388 A.2d 206. Nevertheless, we allowed tolling of the statute of limitations, concluding that although the statute does not contain an exception for tolling, tolling could be applied if "otherwise appropriate." *Id.* at 384, 388 A.2d 206. The Court did not define that phrase, but stated that "in the case of a statutorily created right, a 'substantive' limitation period may appropriately be tolled in a particular set of circumstances if the legislative purpose underlying the statutory scheme will thereby be effectuated." *Id.* at 379, 388 A.2d 206.

In *Gantes,* the Court applied the interpretive standard described in *White* to ascertain the underlying legislative purpose of Georgia's statute of repose. *Gantes* presented a choice of law issue involving a products liability case filed in New Jersey by the representative of a Georgia decedent who was killed at work in

Georgia, allegedly by a defective machine that had been manufactured in New Jersey. *Gantes, supra,* 145 *N.J.* at 482–83, 679 *A.*2d 106. Georgia's statute of repose was similar to a substantive statute of limitations and ordinarily would be applied as part of Georgia law because the accident occurred there. *Id.* at 485–86, 679 *A.*2d 106. Applying our less rigid interpretive standard, we concluded that allowing the statute of repose to bar the cause of action in New Jersey would not fulfill the legislative purposes of the statute. *Id.* at 489–90, 679 *A.*2d 106. Therefore, we applied New Jersey's wrongful death statute of limitations instead. *Id.* at 497–98, 679 *A.*2d 106.

*White* and *Gantes* marked a retreat from the inflexible approach to interpreting substantive statutes of limitations. *Negron* achieved an even larger departure when it acknowledged that substantial compliance is an exception to the substantive provisions of the Wrongful Death Act. That more flexible approach to substantive statutes of limitations takes into account our policy underlying personal injury statutes of limitations. The general purpose of a statute of limitations is to stimulate prompt action and to penalize negligence, while promoting repose by establishing stability in human affairs. *Id.* at 486, 679 *A.*2d 106. Stated differently, the purpose of statutes of limitations is to protect defendants from unexpected enforcement of stale claims by plaintiffs who fail to use reasonable diligence in prosecuting their claims. *Kyle v. Green Acres at Verona, Inc.,* 44 *N.J.* 100, 115, 207 *A.*2d 513 (1965).

Statutes of limitations regarding the categories of claims generically described as "personal injuries" had their inception with the English Parliament when abuses from stale claims became unendurable. *Kyle, supra,* 44 *N.J.* at 103, 207 *A.*2d 513. To remedy the problem, Parliament passed from time to time "various statutes barring suits and actions, the causes of which arose previous to their respective dates, i.e., the beginning of the reign of King Henry the First, the return of King John from Ireland, the

journey of Henry the Third into Normandy, and the coronation of King Richard the First." *Ibid.*

The first of such statutes to contain a tolling provision for minors was contained in the English statute of 21 *James* 1, c. 16 (1623). That statute, among other things, allowed tolling of accrual of a cause of action for personal injuries until a person was twenty-one years of age. "That statute was declared in force in the province of New Jersey in 1728 and re-enacted by the State Legislature in 1799." *O'Connor v. Abraham Altus,* 67 *N.J.* 106, 131, 335 *A.*2d 545 (1975) (Pashman, J., concurring and dissenting). The New Jersey Constitution of 1776 provided that "the common law of England, as well as so much of the statute law, as have been heretofore practiced in this colony, shall still remain in force, until they shall be altered by a future law of the legislature." *N.J. Const. of 1776,* Art. XXII.

Then in 1799 the New Jersey Legislature passed a statute providing for limitation of actions in several fields, *see Patterson's Laws,* 352, that was almost identical to that of 21 *James* 1, c. 16 § 4. *Kyle, supra,* 44 *N.J.* at 104–105, 207 *A.*2d 513.

The statute, as amended in 1799, was again amended in February 1820. That amendment provided for a tolling if the defendant was a non-resident. 1820 *N.J. Laws* 46 (1820). The statute was again supplemented in 1841 to create tolling for six months when the defendant had died. 1841 *N.J. Laws* 48 (1841); Harrison, *Public Laws of New Jersey* (1843), p. 428; *Kyle, supra,* 44 *N.J.* at 105, 207 *A.*2d 513.

When our Wrongful Death Act was first enacted in 1848, statutory tolling for minors for generically described "personal injuries" had been in existence in New Jersey for over half of a century. Because there had been statutory tolling for minors since 1799, when the Legislature enacted the Wrongful Death Act in 1848, it reasonably could have believed that it would be superfluous to include a separate infancy tolling provision within the Wrongful Death Act. Another explanation is that the lack of a provision was simply a legislative oversight. The infancy tolling

statute adopted in 1799 was essentially unchanged prior to 1951. *Kyle, supra,* 44 *N.J.* at 104–115, 207 *A.*2d 513.

Prior to the 1951 amendment, the infancy tolling statute, formerly *R.S.* 2:24–4, now *N.J.S.A.* 2A:14–21, *see L.* 1951, *cc.* 344, 345, expressly applied to the same three limitation periods that existed in 1799: actions on the case, personal injuries and libel. The 1951 amendments added ten or more new tolling categories, but no special category was created for wrongful death claims. However, the statute of limitations period under *N.J.S.A.* 2A:14–2 for personal injuries continued to be tolled. As noted that statute provides: "Every action at law for an injury to the person caused by the wrongful act, neglect, or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued."

The 1951 revisions were largely procedural in nature because they were intended to delete procedural matters from the statute and to reaffirm the court's power to control procedural matters. *State v. Haines,* 18 *N.J.* 550, 558–59, 115 *A.*2d 24 (1955); *State v. Otis Elevator Co.,* 12 *N.J.* 1, 17–18, 95 *A.*2d 715 (1953). For instance, of the ten additional sections permitting infancy tolling, five previously had their own separate infancy tolling clauses. It is not clear why the other five were included and the legislative history does not shed any light on the 1951 revisions to the infant tolling statute. Four of those sections previously had not been characterized as "actions" prior to the revisions. That may have obviated the need for an infant tolling clause in those sections. It is therefore reasonable to conclude that the Legislature basically changed the sequential listing of the infant tolling statute from *R.S.* 2:24–4 to *N.J.S.A.* 2A:14–21 and expressly embraced, in addition to the traditional limitation periods, several limitation periods that previously had their own infancy tolling clauses. Hence, our examination of the issue whether there should be infancy tolling of wrongful death claims, leads us to conclude that the Legislature would not have intended to preclude it. The following example best illustrates the point.

Assume that a five-year-old child and his father are struck by a car while crossing a street. Both are injured severely. The child survives with disabilities. The father, however, dies a week later from his injuries. The child is the sole next-of-kin. A wrongful death claim and a personal injury claim on behalf of the child are filed five years after the accident. Undisputably, the tolling statute applies to the child's personal injury claim. We do not believe that the Legislature would have intended that the wrongful death claim should be barred either in that hypothetical example or in the present case. Although a literal reading of the Wrongful Death Act might suggest a different result, considerations of fairness and equity convince us that the true legislative intent is otherwise. The Legislature does not expect a child under the Wrongful Death Act "to understand or act upon his legal rights; he should not be made to suffer for failure to do so. Nor should he be penalized for the ignorance or neglect of his parents or guardian in failing to assert those rights." *O'Connor, supra,* 67 *N.J.* at 132, 335 *A.*2d 545 (Pashman, J., concurring and dissenting). We are persuaded that to allow tolling for a minor's wrongful death claim poses no threat to the salutary purpose of the statute of limitations.

As stated, our statutes permit tolling for personal injuries suffered by minors. The applicable statute of limitations allows up to two years after accrual of a cause of action to file a complaint. *N.J.S.A.* 2A:14–2. The tolling provision regarding personal injuries to minors provides:

> If any person entitled to any of the actions or proceedings specified in sections 2A:14–1 to 2A:14–8 or sections 2A:14–16 to 2A:14–20 of this title or to a right or title of entry under section 2A:14–6 of this title is or shall be, at the time of any such cause of action or right or title accruing, under the age of [18] years, or insane, such person may commence such action or make such entry, within such time as limited by said sections, after his coming to or being of full age or of sane mind.

[*N.J.S.A.* 2A:14–21.]

Under the statute, if a personal injury claimant is less than eighteen when the cause of action accrues, the statute of limitations is tolled for two years after the person reaches his or her

majority. *Ibid.* As noted previously, the Wrongful Death Act contains no tolling provision.

The decisional law in New Jersey has not been uniform in respect of equitable tolling for minors. Some cases have declined to allow minority tolling. *See, e.g., Scharwenka v. Cryogenics Mgmt., Inc.,* 163 *N.J.Super.* 16, 21–22, 394 *A.*2d 137 (App.Div. 1978) (refusing to extend minority tolling to untimely petition for workers' compensation benefits because statute did not provide for it); *Lombardi v. Simon,* 266 *N.J.Super.* 708, 712, 630 *A.*2d 426 (Law Div.1993) (refusing to toll wrongful death statute of limitations). In *Cockinos v. GAF Corp.,* 259 *N.J.Super.* 204, 611 *A.*2d 1154 (Law Div.1992), the court specifically held that tolling for infancy does not apply to wrongful death claims because our wrongful death statute does not include a minority tolling provision. *Id.* at 207–09, 611 *A.*2d 1154. However, a more enlightened approach was applied in *Barbaria v. Township of Sayreville,* 191 *N.J.Super.* 395, 404, 467 *A.*2d 259 (App.Div.1983), where the Appellate Division permitted minority tolling in a wrongful death cause of action. The court reasoned that the death of a parent was essentially an injury to the child, much like a child's own physical injury, and therefore the child's wrongful death claim should be tolled, in the same way that his or her injury would be tolled under *N.J.S.A.* 2A:14–2. *Id.* at 401–02, 467 *A.*2d 259. That approach is consistent with the approach followed in other jurisdictions.

Other states also have extended minority tolling to their wrongful death statutes despite an absence of statutory language explicitly adopting such tolling. The Massachusetts Supreme Judicial Court, for example, has held that minority tolling applies to its wrongful death statute. *Gaudette v. Webb,* 362 *Mass.* 60, 284 *N.E.*2d 222, 229–31 (1972). The Massachusetts wrongful death statute in effect at the time of the decedent's death in *Gaudette* stated: "An action to recover damages under this section shall be commenced within one year from the date of death or within such time thereafter as is provided [in the tolling provisions of another

chapter]." *Id.* at 225 (internal quotation marks omitted). Those tolling provisions, however, applied only to actions that the deceased could have brought, and therefore did not apply to wrongful death actions. *Ibid.* Significantly, the court used a different approach to permit equitable tolling of the wrongful death claims. Despite precedents to the contrary, the court determined that Massachusetts law had "evolved to the point where it may now be held that the right to recovery for wrongful death is of common law origin." *Id.* at 229. On that basis, the court held that the state's wrongful death statute, in appropriate cases, may be tolled. *Ibid.*

The Alaska Supreme Court has held that "the disability of a minor statutory beneficiary tolls the running of the two year time limit for commencing a wrongful death action until the disability is concluded." *Haakanson v. Wakefield Seafoods, Inc.*, 600 P.2d 1087, 1092 (Alaska 1979). Alaska's wrongful death statute stated that an "action shall be commenced within two years after the death." *Id.* at 1088 n. 2 (internal quotation marks omitted). The court had to decide whether Alaska's general tolling statute applied to extend the two-year limitation contained in the wrongful death statute. The Alaska court noted that "[t]he primary purpose of the wrongful death statute is to compensate those who suffer a direct loss." *Id.* at 1090. It found that "[d]enying recovery to the [deceased parents'] children would defeat this purpose." *Ibid.* The court could "think of no good reason why" the public policy favoring protecting the interests of minors, evident in Alaska's general tolling statute, "should not apply to wrongful death actions." *Id.* at 1090–91. Therefore, the court decided to allow a minority toll of its wrongful death statute.

The Illinois Supreme Court also has determined that the two-year statute of limitations contained in its wrongful death statute did not apply to the claims of minors. *Wilbon v. D.F. Bast Co.*, 73 *Ill.*2d 58, 22 *Ill.Dec.* 394, 382 *N.E.*2d 784, 790–91 (1978). At that time, Illinois's wrongful death statute required: "Every such action shall be commenced within 2 years after the death of such

person." *Id.* at 784–85 (internal quotation marks omitted). After an examination of the history of wrongful death actions in this country and of the legislative intent underlying the Illinois wrongful death statute, the court concluded that logic and justice required it to allow the minor plaintiffs to proceed. *Id.* at 790–91 (explaining that " '[a] child with a meritorious cause of action but incapable of initiating any proceeding for its enforcement will not be left to the whim or mercy of some self-constituted next friend to enforce its rights' ") (quoting *McDonald v. City of Spring Valley*, 285 *Ill.* 52, 120 *N.E.* 476, 478 (1918)).

Like the Workers' Compensation Act, *N.J.S.A.* 34:15–51, and the Tort Claims Act, *N.J.S.A.* 59:8–8, that specifically authorize a representative to bring an action on behalf of minors, New Jersey's Wrongful Death Act authorizes the administrator *ad prosequendum* or the executor or administrator with the will annexed to bring the action. Although the wrongful death action can be instituted only by an administrator *ad prosequendum* or the executor or administrator with the will attached, *N.J.S.A.* 2A:31–2, the legislative purpose was to join all claims in a single action rather than to allow each wronged next-of-kin to file a separate action. *Barbaria*, 191 *N.J.Super.* at 402, 467 *A.*2d 459.

Recovery for wrongful death "is primarily for the pecuniary damages to the decedent's next-of-kin," some of whom may be minors or incompetents. *Id.* at 401, 467 *A.*2d 259; *N.J.S.A.* 2A:31–5. The Appellate Division observed in *Barbaria*, that when the wrongful death claim belongs to infants in whole or in part, the infants should be treated as if they were pursuing a claim for their own injuries. "The losses an infant suffers upon the death of a parent may be no less deserving of compensation than the losses he suffers from his own injury." *Barbaria*, *supra*, 191 *N.J.Super.* at 401–02, 467 *A.*2d 259. Although we do not necessarily subscribe to the analysis adopted in *Barbaria*, we are nevertheless persuaded that the tolling statute, which tolls for infants the two-year statute of limitations applicable to "[e]very action at law for

an injury to the person caused by the wrongful act [or] neglect of any person," *N.J.S.A.* 2A:14–21, should be construed to toll as well wrongful death actions by infants because such actions are fairly encompassed by the limitation provisions applicable to actions for injury to the person. Although we are confident that construction of the tolling statute is consistent with the Legislature's intent, the Legislature is of course free to correct our interpretation if we have misperceived its intent.

The New Jersey decisions holding that tolling should not be permitted are premised on the inflexible approach to substantive statutes of limitations that we modified in *White, Gantes,* and *Negron.* Applying minority tolling to wrongful death actions is consistent with the applicability of minority tolling to other complex tort actions. We already permit minors in medical malpractice cases involving the delivery of an infant plaintiff, *Riemer v. St. Clare's Riverside Med. Ctr.,* 300 *N.J.Super.* 101, 105–07, 691 *A.*2d 1384 (App.Div.1997), and in preconception tort cases, *Lynch v. Scheininger,* 162 *N.J.* 209, 232, 744 *A.*2d 113 (2000), to file a claim over eighteen years after the alleged negligent conduct occurred. We have permitted tolling of statutes of limitations "even though [such] interpretation and application have the effect of lengthening the defendant's jeopardy." *Farrell v. Votator Div. of Chemetron Corp.,* 62 *N.J.* 111, 121, 299 *A.*2d 394 (1973). Furthermore, our Wrongful Death Act is remedial in nature and is designed "to compensate surviving dependents for the pecuniary losses resulting from death" of, in many cases, the "breadwinner." *Kibble v. Weeks Dredging & Const. Co.,* 161 *N.J.* 178, 189, 735 *A.*2d 1142 (1999). The claims of these young children should not be barred because their mother filed the complaint twenty-seven days late. The purpose of tolling the statute of limitations for minors is to "protect minors who presumably are not well-versed in legal ... matters, from the adverse consequences of their inexperience." *Green v. Auerbach Chevrolet Corp.,* 127 *N.J.* 591, 600, 606 *A.*2d 1093 (1992) (internal quotation marks omitted). Accordingly, we hold that minority tolling may

be applied to the Wrongful Death Act and was properly applied in this case.

We recognize that one could view the majority opinion, as the dissenters have, as being too broad and not consistent with certain rules of statutory construction. On the other hand, some, including those in the majority, view the dissenting opinion as a compendium of mechanical rules that is too narrow and too technical. "Law is more than an exercise in logic, and logical analysis.... Law should not become a[n] instrument of injustice." *Procanik by Procanik v. Cillo,* 97 *N.J.* 339, 351, 478 *A.*2d 755 (1984). "When all is said and done, the matter of statutory construction ... will not justly turn on literalisms, technisms, or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the common-sense of the situation." *Jersey City Chap. Prop. Owner's Protective Ass'n v. City Council,* 55 *N.J.* 86, 100, 259 *A.*2d 698 (1969). There is no suggestion that the lapse of twenty-seven days has prejudiced defendants; nor is there any suggestion that the minor children have been advantaged by the tolling. We believe our opinion advances the legislative intent underlying the Wrongful Death Act and the infant tolling statute, and will disserve none of the policies underlying the statutes of limitations.

## III.

### A.

There is yet another important reason why tolling for minors should apply to our Wrongful Death Act: wrongful death claims were cognizable at common law. Four years after the adoption of New Jersey's Constitution of 1844, New Jersey adopted its first Wrongful Death Act in 1848. The Act was modeled after Lord Campbell's Act of 1846. That fact is highly significant because the common law of England has a constitutional basis in our State. "New Jersey's Constitution of 1776 provided that the common law of England (as well as so much of the statute law) as was practiced

in the colony should remain in force until altered by the Legislature (Art. XXII) and the Constitution of 1844 provided that the common law (and statute laws) shall remain in force until they expired by their own limitation or were altered by the Legislature (Art. X, par. 1)." *Collopy v. Newark Eye & Ear Infirmary*, 27 *N.J.* 29, 43, 141 *A.*2d 276 (1958); *State v. One 1990 Honda Accord*, 154 *N.J.* 373, 381, 712 *A.*2d 1148 (1998); *State v. Smith*, 85 *N.J.* 193, 199, 426 *A.*2d 38 (1981). In England, no common law cause of action for wrongful death existed. *Baker v. Bolton*, 170 *Eng. Rep.* 1033 (Nisi Prius 1808).

In *Baker* the plaintiff was the decedent's husband suing a stagecoach owner for damages for his own losses caused by his wife's death when a stagecoach overturned. Lord Ellenborough instructed the jury that the damages were limited to plaintiff's loss of society and the grief he suffered from the date of the accident to the time of death. Because the time-span for the damages consisted of less than one month, the case involved a small amount of money. Although there was no claim before the court for the death itself, the jury was instructed that "in civil court, the death of a human being could not be complained of as an injury." Stuart M. Speiser et al., *Recovery for Wrongful Death and Injury*, § 1:1, 1 (3d ed.1992). That dictum of Lord Ellenborough became the basis for the New Jersey and national so-called common law rule that there could be no recovery for wrongful death in the absence of statute without any critical examination. *Ibid. Baker* was not based on precedent or logic and that led Dean Prosser to observe that as a result of adopting *Baker*, "it was cheaper for the defendant to kill the plaintiff than to injure him." *Prosser & Keeton on Torts*, § 127 (5th ed.1984). The dictum in *Baker* was eventually overturned thirty-eight years later when Lord Campbell's Act was adopted.

Lord Campbell's Act of 1846 created a statutory action for wrongful death. Lord Campbell's Act (Fatal Accidents Act), 1846, 9 & 10 Vict., ch. 93. The preamble to Lord Campbell's Act of 1846 was a parliamentary declaration of what the English common-law

rule was at that time. That Act created a civil cause of action for deaths that had been caused under circumstances that would amount to a felony under the criminal laws. *Ibid.*

Our Act of 1848, however, did not include the preamble contained in Lord Campbell's Act declaring that no cause of action existed at common law for wrongful death. *Negron, supra,* 156 *N.J.* at 315, 716 *A.*2d 1158 (Handler, J., concurring). In addition, when our Act became law in 1848, "the only reported cases in American law were those that allowed for the recovery of damages for the death of another." *Ibid.*

Legal historians have concluded that the sole substantial reason why the English common law rule disallowed a wrongful death cause of action was the felony-merger doctrine. F. Pollock, *Law of Torts* 52–57 (Landon ed.1951); W. Holdsworth, *The Origin of the Rule in Baker v. Bolton,* 32 *L.Q. Rev.* 431 (1916). Under the felony-merger doctrine, no civil recovery was permitted under the common law for an act that constituted both a tort and a felony. The felony was against the Crown and was deemed more serious than the tort, and thus the tort was merged into, or pre-empted by, the felony. *Smith v. Sykes,* 89 *Eng. Rep.* 160 (K.B.1677); *Higgins v. Butcher,* 80 *Eng. Rep.* 61 (K.B.1607); *Grosso v. Delaware, Lackawanna & W. R.R. Co.,* 50 *N.J.L.* 317, 318–20, 13 *A.* 233 (Sup.Ct.1888). "The doctrine found practical justification in the fact that the punishment for the felony was the death of the felon and the forfeiture of his property to the Crown; thus, after the crime had been punished, nothing remained of the felon or his property on which to base a civil action. Since all intentional or negligent homicides were felonious, there could be no civil suit for wrongful death." *Moragne v. States Marine Lines, Inc.,* 398 *U.S.* 375, 382, 90 *S.Ct.* 1772, 1778, 26 *L.Ed.*2d 339 (1970). Viewed in its historical context, it becomes apparent that when our Legislature adopted our Wrongful Death Act, its failure to include the preamble to Lord Campbell's Act means that our Legislature intentionally altered the English common law announced in *Baker* at the time it enacted our Wrongful Death Act in 1848. Stated different-

ly, our Act of 1848 left in place the pre-*Baker* English common law that had been adopted at the time of our Constitution of 1776.

Although New Jersey has for many years permitted property used to perpetuate a crime to be forfeited pursuant to statute, *see L.* 1898, *c.* 237, § 168, and *N.J.S.A.* 2C:64–1 to –9, the felony-merger doctrine that was part of the English common law never became part of the common-law tradition in New Jersey or the United States. *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 *U.S.* 663, 680–83, 94 *S.Ct.* 2080, 2090–92, 40 *L.Ed.*2d 452, 468 (1974); *State v.1979 Pontiac Trans Am., Color Grey,* 98 *N.J.* 474, 479–80, 487 *A.*2d 722 (1985). Furthermore, the fact that forfeiture never existed in New Jersey under the common law, *One 1990 Honda Accord, supra,* 154 *N.J.* at 378–79, 712 *A.*2d 1148, provides additional support for our conclusion that because the felony-merger doctrine that undergirds *Baker* was never adopted in New Jersey, our case law that applied *Baker* was mistaken.

■ Justice Handler's concurring opinion in *Negron, supra,* 156 *N.J.* at 307–20, 716 *A.*2d 1158, convincingly establishes that New Jersey had a common law wrongful death cause of action before our first statute was passed in 1848. We now adopt his conclusion that our Wrongful Death Act is a codification of our common law. The practical effect of recognizing a common law wrongful death claim is that it provides an independent basis on which to allow equitable tolling of the Wrongful Death Act. Such recognition demonstrates that the statute of limitations contained in *N.J.S.A.* 2A:31–3 is procedural and therefore indisputably subject to equitable principles.

At some point after 1844, New Jersey, like nearly all other jurisdictions, followed the rule announced in *Baker v. Bolton, supra,* the first explicit holding that no civil cause of action existed at common law for the death of an individual. Recent analysis, however, has indicated that the *Baker* approach was ill-founded. As a result, some courts have begun to re-assert the common-law basis for wrongful death actions. *See* 65 *Am.Jur. Trials* § 7, at

289 (1997) ("Recognition of a common law action for wrongful death is increasingly being recognized in the United States.").

The United States Supreme Court has lent some support to deviating from the *Baker* approach. The Court has held that there is a common law right to recovery for wrongful death under general maritime law. *Moragne, supra,* 398 *U.S.* at 409, 90 *S.Ct.* at 1792, 26 *L.Ed.*2d at 361. Like our holding today, that decision also was reached after more than a century of following the *Baker* rule.

In *The Harrisburg,* 119 *U.S.* 199, 7 *S.Ct.* 140, 30 *L.Ed.* 358 (1886), relying largely on *Baker,* the Supreme Court held that absent a federal statute, there was no common law cause of action for wrongful death under Federal Maritime Law for tortious deaths in state territorial waters. *Id.* at 213, 7 *S.Ct.* at 147–48, 30 *L.Ed.* at 361. That holding attracted a great deal of criticism. The Supreme Court revisited the issue nearly three-quarters of a century later in *The Tungus v. Skovgaard,* 358 *U.S.* 588, 79 *S.Ct.* 503, 3 *L.Ed.*2d 524 (1959). In *The Tungus,* the Supreme Court unanimously agreed that where a death occurring in state territorial waters is left remediless by the general maritime law and by federal statutes, a remedy may be provided by any applicable state law that recognizes a cause of action for wrongful death. Four Justices dissented, however, from the Court's holding that "when admiralty adopts a State's right of action for wrongful death, it must enforce the right as an integrated whole, with whatever conditions and limitations the creating State has attached." *Id.* at 592, 79 *S.Ct.* at 506, 3 *L.Ed.*2d at 528. The dissenters would have held that federal maritime law could utilize the state law to "supply a remedy" for breaches of federally imposed duties, without regard to any substantive limitations contained in the state law. *Id.* at 597, 599, 79 *S.Ct.* at 509, 510, 3 *L.Ed.*2d at 531.

Almost immediately after the Court decided *The Tungus,* it became critical of its own decision because its holding in *The Tungus* had led to uncertainty within the Court itself. *See Hess v.*

*United States,* 361 *U.S.* 314, 80 *S.Ct.* 341, 4 *L.Ed.*2d 305 (1960); *Goett v. Union Carbide Corp.,* 361 *U.S.* 340, 80 *S.Ct.* 357, 4 *L.Ed.*2d 341 (1960).

More than a century after *The Harrisburg* had been decided, the Court conducted a fresh examination of the entire subject in *Moragne, supra,* 398 *U.S.* at 381, 90 *S.Ct.* at 1772, 26 *L.Ed.*2d at 346. The Court concluded that the primary source of prior confusion emanated from its erroneous decision in *The Harrisburg.* The Court acknowledged that *The Harrisburg* was dubious when it was rendered and had become such an unjustifiable anomaly under present maritime law that it should no longer be followed. Hence, the Court in *Moragne* overruled its earlier holding in *The Harrisburg.* First, the Court acknowledged that the holding in *The Harrisburg* had little justification except in primitive English legal history, a history far removed from the American Law of Remedies for Maritime Deaths. The Court deemed it a fallacy to have ever adopted the *Baker* rule, which was based on the felony-merger doctrine that was repudiated by the House of Lords in 1916. *Moragne, supra,* 398 *U.S.* at 383–84, 90 *S.Ct.* at 1778–79, 26 *L.Ed.*2d at 347–48. The Court further explained:

> The most likely reason that the English rule [*Baker*] was adopted in this country without much question is simply that it had the blessing of age.... Such nearly automatic adoption seems at odds with the general principle, widely accepted during the early years of our Nation, that while "[o]ur ancestors brought with them [the] general principles [of the common law] and claimed it as their birthright; * * * they brought with them and adopted only that portion which was applicable to their situation." *Van Ness v. Pacard,* [27 *U.S.*] 2 *Pet.* 137, 144, 7 *L.Ed.* 374 (1829) (Story, J.); *The Lottawanna,* [88 *U.S.*] 21 *Wall.* 558, 571–574, 22 *L.Ed.* 654 (1875); *see* R. Pound, *The Formative Era of American Law* 93–97 (1938); H. Hart & A. Sacks, *The Legal Process* 450 (tent. ed.1958). The American courts never made the inquiry whether this particular English rule, bitterly criticized in England, "was applicable to their situation," and it is difficult to imagine on what basis they might have concluded that it was.
>
> [*Moragne, supra,* 398 *U.S.* at 386, 90 *S.Ct.* at 1780, 26 *L.Ed.*2d at 348 (alteration in original).]

The recognition of a common law basis for wrongful death actions is not limited to the United States Supreme Court. The Supreme Judicial Court of Massachusetts has explicitly held that

its wrongful death statute is, contrary to previous precedents, a codification of the common law. *Gaudette, supra,* 284 *N.E.*2d at 229 (holding that "the right to recovery for wrongful death is of common law origin"). Several other courts have cited the common law approach with approval. *See Haakanson, supra,* 600 *P.2d* at 1092 n. 11 (finding that Alaska's wrongful death statute is not in derogation of its common law, but stating that if there was no statute, the court would follow the lead of *Moragne* and *Gaudette* ); *Wilbon, supra,* 382 *N.E.*2d at 785 (allowing minor plaintiffs' action to toll wrongful death statute of limitations despite precedent stating that there was no common law right to recover for wrongful death and quoting with approval assertion that *Baker v. Bolton* rule was " 'obviously unjust, . . . technically unsound . . . and based upon a misreading of legal history' ") (quoting 3 W. Holdsworth, *History of English Law* 336 (3d ed.1927)); *Salazar v. St. Vincent Hosp.,* 95 *N.M.* 150, 619 *P.*2d 826 (Ct.App.1980) (noting existence of common law right to recover for wrongful death in New Mexico).

Hawaii has always held that a common law right of action for wrongful death exists. 65 *Am.Jur. Trials* § 4 (1997) (citing *Rohlfing v. Moses Akiona, Ltd.,* 45 *Haw.* 373, 369 *P.*2d 96 (1961), *rev'd on other grounds, Greene v. Texeira,* 54 *Haw.* 231, 505 *P.*2d 1169 (1973)). Georgia began to recognize a right to sue for wrongful death before it passed its wrongful death statute, without explicitly acknowledging that the right derived from the common law. *Id.* § 6 (citing *Shields v. Yonge,* 15 *Ga.* 349 (1854)). A recent case indicates Georgia's continued willingness to recognize a common law basis for wrongful death actions. *Id.* § 7 (citing *Velez v. Bethune,* 219 *Ga.App.* 679, 466 *S.E.*2d 627 (1995) (allowing cause of action for wrongful death where plaintiffs asserted that defendant physician terminated life support for their nine day-old child without their consent)). At least three other cases recognized a common law action for wrongful death prior to 1848. Dennis M. Doiron, *A Better Interpretation of the Wrongful Death Act,* 43 *Me. L.Rev.* 449, 468 (1991) (citing *Plummer v. Webb,* 19 *F. Cas.* 894 (No. 11234) (D.Me.1825); *Cross v. Guthery,* 2 *Root* 90 (Conn.Su-

per.Ct.1794); *Ford v. Monroe,* 20 *Wend.* 210 (N.Y.Sup.Ct.1838)). Further, the Minnesota Supreme Court has stated that it gives all statutes "a fair construction, with the purpose of its enactment in view, not narrowed or restricted because it is a substitute for the discarded common law." *Teders v. Rothermel,* 205 *Minn.* 470, 286 *N.W.* 353, 354 (1939) (internal quotation marks omitted).

Thus, while today's decision does not require us to base minority tolling to the Wrongful Death Act on the common law, we are now convinced that an action for wrongful death did exist at common law, prior to the enactment of *N.J.S.A.* 2A:31–3 and its predecessor. At common law, statutes of limitations were considered to be procedural in nature because they limit only the procedural remedy and not the right. Willis L.M. Reese and Maurice Rosenberg, *Conflict of Laws* § 3 at 425 (8th ed.1984); Sam Walker, *Forum Shopping for Stale Claims: Statutes of Limitations and Conflict of Laws,* 23 *Akron L.Rev.* 19, 22 (1989). We hold that because *N.J.S.A.* 2A:31–3 is a procedural statute of limitations that relates to a cause of action cognizable under our common law, an additional reason exists to allow tolling based on equitable principles.

B.

Only after examining the weighty considerations that underlie the *stare decisis* doctrine, which has at its core the need for predictability in cases, we have come to the conclusion that judges of earlier generations who concluded that a wrongful death cause of action did not exist at common law misperceived what the common law was in New Jersey. There is no question in this case of any change in duty owed by health care providers to their patients. The change is remedial and not substantive; therefore, the change does not affect the confidence of people, such as health care providers, in their ability to predict the legal consequences of their actions.

This is not the first time that our Court has overturned what had been judicially determined to be the common law or public

policy of this State for many years. For example, statutory forfeiture of innocent property had been conducted in non-jury proceedings for more than a century prior to 1998. Notwithstanding that historical, albeit mistaken, practice, this Court recently held that such proceedings should have been conducted before a jury beginning as early as 1776. *State v. One 1990 Honda Accord, supra,* 154 *N.J.* at 381–93, 712 *A.*2d 1148. Another example is the charitable immunity doctrine, first declared by our courts in 1925. *D'Amato v. Orange Mem'l Hosp.,* 101 *N.J.L.* 61, 127 *A.* 340 (E. & A.). Thirty-three years later this Court abrogated the doctrine in a trilogy of cases. *Dalton v. St. Luke's Catholic Church,* 27 *N.J.* 22, 141 *A.*2d 273 (1958); *Collopy, supra,* 27 *N.J.* 29, 141 *A.*2d 276; *Benton v. Y.M.C.A.,* 27 *N.J.* 67, 141 *A.*2d 298 (1958). In overturning existing case law, the Court acknowledged that "[s]ince the earliest days our courts have recognized and discharged the vital responsibility of re-examining questioned decisions whether they be their own or those of their predecessors." *Collopy, supra,* 27 *N.J.* at 46, 141 *A.*2d 276. Other well-settled, but similarly mistaken common-law principles, have been rejected, including the requirement of privity of contract in breach of warranty cases, *Henningsen v. Bloomfield Motors, Inc.,* 32 *N.J.* 358, 415–16, 161 *A.*2d 69 (1960), and an infant's disability to sue for prenatal injuries. *Lynch, supra,* 162 *N.J.* at 232, 744 *A.*2d 113; *Smith v. Brennan,* 31 *N.J.* 353, 359–66, 157 *A.*2d 497 (1960).

In the area of tort law, such as professional negligence, there can be little, if any, justifiable reliance on procedural law because the rule of *stare decisis* is admittedly limited. We fully agree with Dean Roscoe Pound when he stated: *"[S]tare decisis* has no legitimate application to doctrines of the law of torts built upon a mistaken foundation persisting in the books after that foundation has been undermined, which are out of accord with general principles recognized today, so that if they are rejected the general law is clarified rather than unsettled." Roscoe Pound, *Some Thoughts About Stare Decisis,* 13 *NACCA,* L.J. 19, 23 (1954). Because our earlier judicial conclusion that New Jersey

did not have a wrongful death cause of action at common law found its way into our law through misconception, because that approach operates harshly when equitable principles are not applied to ameliorate its harshness to conform with modern concepts of justice and fairness, and because the underpinning for the English rule that was followed in New Jersey for so long has been condemned, the time has come for its elimination. Simply stated, there was historical error of grave proportion. In overruling prior precedent, we are discharging our "vital responsibility of re-examining questioned decisions whether they be [our] own or those of [our] predecessors." *Collopy, supra,* 27 *N.J.* at 46, 141 *A.*2d 276. "Respect for the process of adjudication should be enhanced, not diminished, by [such a] ruling today," *Moragne, supra,* 398 *U.S.* at 405, 90 *S.Ct.* at 1790, 26 *L.Ed.*2d at 359, because we are clarifying rather than unsettling our common law.

### IV.

The survival action that was filed by Mrs. LaFage as the executor or administratrix, is based on *N.J.S.A.* 2A:15–3. The damages recoverable in the survivorship action belong to the decedent's estate. *Barbaria, supra,* 191 *N.J.Super.* at 401, 467 *A.*2d 259; *N.J.S.A.* 2A:15–3. The executor or administratrix pursues that cause of action for the estate. Therefore, any recovery in the survivorship claim will not directly be for the infants or the widow. *Barbaria, supra,* 191 *N.J.Super.* at 401, 467 *A.*2d 259. Because that cause of action belongs to the estate and must be pursued by the representative of the estate, there is no reason to toll that claim due to the minority of decedent's children or based on the discovery rule.

### V.

We therefore affirm the trial court and hold that tolling for minors will apply to the Wrongful Death Act in this and other appropriate cases. We decline to address the discovery rule issue because, even using the discovery rule, Mrs. LaFage's claim is

barred by the two-year statute of limitations because it was filed more than two years after she spoke with Dr. Romano. The claims of the LaFage children, on the other hand, were tolled due to their infancy.

As modified, we affirm the judgment of the Law Division.

LaVECCHIA, J., concurring and dissenting.

As Justice Felix Frankfurter once observed, in the judicial construction of a statute "there is a difference between reading what is and rewriting it." *Shapiro v. United States,* 335 *U.S* . 1, 43, 68 *S.Ct.* 1375, 1397, 92 *L.Ed.* 1787, 1812 (1948) (Frankfurter, J., dissenting). At times the difference is elusive, but not this time.

The New Jersey Wrongful Death Act (Act), *N.J.S.A.* 2A:31–1 to –6, contains some simple, yet emphatic, words: "Every action brought under this chapter shall be commenced within 2 years after the death of the decedent, and not thereafter." *N.J.S.A.* 2A:31–3. Undoubtedly, the Court is benevolently motivated when it concludes that equitable tolling principles, specifically infant tolling, are applicable to the two-year limitation period for commencing a wrongful-death action. *Ante* at 421, 766 *A.*2d at 1070. But, I must disagree because there is no place for such considerations in this statute.

The statutory wrongful-death cause of action is authorized with the clear prescription that the action be brought within two years of the date of death, not two years from some later date as determined by tolling notions. It is for the Legislature to provide relief from the two-year limitation period, not the Court.

I.

The trial court employed discovery-rule precepts before concluding that plaintiff Carmella LaFage's wrongful-death action was untimely. The Court examines the facts from the same perspective and, upon concluding also that plaintiff's complaint was filed too late even under those discovery-rule considerations,

pronounces that it does not reach the question of whether discovery-rule principles may apply to a wrongful-death action. Because the Court considered applying the discovery rule, but did not formally reach the issue, I am compelled to state my disagreement that the discovery rule, or other equitable tolling principles, have any application in the setting of a wrongful-death action.

First, concerning the discovery rule, the argument that the rule may be applied to plaintiff's wrongful-death action, notwithstanding the unambiguous language of *N.J.S.A.* 2A:31–3 setting the starting date from which a wrongful-death action must be brought at the "death of the decedent, and not thereafter," overlooks the fact that the discovery rule was borne out of a need to judicially divine ambiguous legislative phraseology, not, as here, to avoid a clear legislative prescription.

The Court announced the discovery rule in *Fernandi v. Strully*, 35 *N.J.* 434, 173 *A.*2d 277 (1961). *Lopez v. Swyer*, 62 *N.J.* 267, 273, 300 *A.*2d 563 (1973). In *Fernandi*, the Court explained that "[i]n most of the states, as in New Jersey, the legislatures have not at all expressed themselves ... preferring to leave to judicial interpretation and application the rather obscure statutory phraseology that the plaintiff's proceeding shall be instituted within a stated period after his cause of action 'shall have accrued.'" *Fernandi, supra,* 35 *N.J.* at 439, 173 *A.*2d 277. In *N.J.S.A.* 2A:14–2, the personal injury statute of limitations, the New Jersey Legislature "never sought to define or specify when a cause of action shall be deemed to have accrued within the meaning of the statute." *Id.* at 449, 173 *A.*2d 277. Courts are exercising a proper judicial function when they pass on the meaning of the "rather obscure ... legislative phraseology" of "shall have accrued." *Ibid.* The Court concluded, "In the absence of legislative definition and specification, the New Jersey courts have often been called upon to delineate the statute; they have conscientiously sought to apply it with due regard to the underlying statutory policy of repose, without, however, permitting unnecessary individual injustices." *Ibid.*

The discovery rule announced in *Fernandi* is founded, therefore, on the "obscure statutory phraseology" of "shall have accrued" and on the Legislature's failure to define or specify the accrual point of a personal injury cause of action. *Cf. Baird v. American Med. Optics,* 155 *N.J.* 54, 65, 713 *A.*2d 1019 (1998) (finding that courts determine accrual of cause of action pursuant to *N.J.S.A.* 2A:1–2 because that statute "is silent on when a cause of action will be deemed to have 'accrued' ").

There is no "accrual" language in the Wrongful Death Act. Nevertheless, the Court certainly considered applying the discovery rule and only avoids declaring its applicability, or not, due to the happenstance of facts that preclude saving this plaintiff's wrongful-death action even with the benefit of tolling pursuant to the discovery rule. However, the Court's pregnant suggestion ignores the trigger mechanism for the application of the judicially created discovery rule, that is, the presence of ambiguous "accrual" language in the relevant statute of limitations. The permutation of the discovery rule during the last forty years has not obscured the principle that produced the rule in the first instance, and it does not justify its use in connection with a wrongful-death action.

The *Fernandi* Court's reasoning, linking the ability to employ the equitable notion of discovering the accrual of a personal injury cause of action to the legislative failure otherwise to specify a finite accrual point, is not an anomaly. *See e.g., Lawrence v. Bauer Publ'g & Printing Ltd.,* 78 *N.J.* 371, 373, 396 *A.*2d 569 (1979) (holding that, despite contention relating to discovery rule, statute of limitations barred libel action pursuant to *N.J.S.A.* 2A:14–3, which provides that every action at law for libel must be commenced within "1 year next after the publication of the alleged libel...."). Noting that the doctrine of discovery derives from judicial interpretation of the statute of limitations applicable to personal injury actions, Justice Pashman in *Lawrence* commented that in "the absence of any legislative specification as to the precise time when a claim 'accrues,' our courts, in the exercise of

their judicial function, have developed a rule which best serves the interests of justice." *Id.* at 374, 396 *A.*2d 569 (Pashman, J., concurring). An inexorable conclusion flowed from this understanding:

> The statute of limitations applicable to the present suit, however, does not measure the limitations period in terms of the "accrual" of a cause of action. Instead, it provides that an action must be brought within one year of "the publication" of the alleged libel. The Legislature has therefore fixed a precise date on which the limitations period begins to run. Once the date of publication is determined, there is no need for further judicial interpretation. Hence, the discovery rule is inapplicable to libel actions. *See Rosenberg v. Town of North Bergen,* 61 *N.J.* 190, 293 *A.*2d 662 (1972) (discovery rule inapplicable where statute of limitations provides that an action must be commenced within ten years "after the performance or furnishing of . . . services and construction.").
>
> [*Id.* at 374–75, 396 *A.*2d 569 (Pashman, J., concurring).]

As opposed to the accrual statute in *Fernandi,* the Wrongful Death Act, as with the libel statute in *Lawrence,* is an "absolute" statute, with a fixed objective event: the legislatively deemed date of death as the finite accrual point. The decision in *Presslaff v. Robins,* 168 *N.J.Super.* 543, 546, 403 *A.*2d 939 (App.Div.1979), correctly contrasted the "accrual" category of limitations provisions from statutes such as the wrongful-death provision that "fixes a specified objective event to incept" the running of the limitations period. The *Presslaff* court, quoting the extensive discussion in *Evernham v. Selected Risks Insurance Co.,* 163 *N.J.Super.* 132, 136, 394 *A.*2d 373 (App.Div.1978), properly noted that the equitable tolling principle set forth in the discovery rule is peculiar to statutes of limitations with "accrual" language. *Presslaff, supra,* 168 *N.J.Super.* at 546–47, 403 *A.*2d 939.

In summary, the discovery rule presupposes the absence of a definition of "accrual," allowing interstitial judicial decision making of the type embodied in the creation of the discovery rule. When a statute is *not* silent on when a cause of action accrues, the determination of the accrual of a cause of action for timeliness purposes is legislatively defined, and that judgment must be respected. In such circumstances, there is no ambiguity to settle through application of equitable notions such as the judicially created discovery rule. The Wrongful Death Act differs from the

personal injury statute of limitations in that the Act indelibly marks a date definite for the running of the limitations period. Thus, to apply the discovery rule to the Act would be more than a mere evolution of "discovery rule" law; it would mutate the discovery rule, loosing the rule from its doctrinal mooring.

## II.

### A.

Numerous states have considered the very issue of application of various equitable tolling principles to a wrongful-death action. New Jersey should not join the distinct minority of states whose courts have engaged in statutory construction engrafting equitable tolling principles, such as the discovery rule, onto a wrongful-death statute's limitation period, despite the absence of any ambiguity inviting that judicial interpretation. Commentators examining the issue have helpfully organized the analysis by classifying wrongful-death statutes by type.

Wrongful-death statutes generally can be classified into four groups:

(1) those that merely state that the action must be brought with a specified period of time, without fixing any starting date;

(2) those that specify that the action must be brought within a certain time from the date of death;

(3) those that specify that the action must be brought within a certain time from the accrual of the cause of action, without referring to when the cause of action accrues; and

(4) those that provide that the action must be commenced within a certain time from the date of injury or negligent act.

[Judy E. Zelin, Annotation, *Time of Discovery as Affecting Running of Statute of Limitations in Wrongful Death Action,* 49 *A.L.R.*4th 972, 977 (1986).]

New Jersey's wrongful-death statute unquestionably falls into the second category, the category carrying the least ambiguity. The categorization is important because the terms of the wrongful-death statutes constitute one of the two major factors courts have considered in determining the applicability of equitable tolling principles to the statute of limitations in wrongful-death actions.

*Id.* at 978. The other factor—the specific cause of decedent's death—is not implicated in this case.

The cases rejecting application of the discovery rule to wrongful-death statutes are legion. For example, when confronted with the assertion that the discovery rule should apply to wrongful-death actions, the Supreme Court of Texas methodically dismantled the argument, in part, by reference to New Jersey decisional law. *Moreno v. Sterling Drug, Inc.,* 787 *S.W.*2d 348 (Tex.1990). The relevant limitations statute provided as follows:

(a) A person must bring suit for ... personal injury ... not later than two years after the cause of action accrued.

(b) A person must bring suit not later than two years after the day the cause of action accrues in an action for injury resulting in death. The cause of action accrues on the death of the injured person.

[*Id.* at 350.]

The plaintiff there argued "that if subparts (a) and (b) are not interpreted consistently it will result in the absurdity of allowing a defendant to be exonerated for conduct which kills but held liable for conduct which merely maims." *Id.* at 350–51. The Texas Supreme Court rejected that argument, stating that subpart (b) specifies that a cause of action "accrues" at a certain time—the date of death. *Id.* at 351. In contrast, when the legislature uses the term "accrues" without an accompanying definition, as in subpart (a), "the courts must determine when that cause of action accrues and thus when the statute of limitations commences to run." *Ibid.* The court went on to note that in three previous cases it had adopted and relied on the principles announced in *Fernandi, supra,* 35 *N.J.* at 449, 173 *A.*2d 277. *Moreno, supra,* 787 *S.W.*2d at 351. Taking the lesson gleaned from *Fernandi,* the court restated that the discovery rule "is a judicially constructed test which is used to determine when a plaintiff's cause of action accrued" and that the rule has been applied "to a statute of limitations which left the phrase 'accrual' undefined." *Ibid.* In contrast, subpart (b) specifically defines "accrual" as the date of death. *Ibid.*

*Moreno* presented the question of "whether the discovery rule should be applied to a limitations statute which has clearly and unequivocally prescribed that a cause of action accrues upon the occurrence of a specified event." *Ibid.* The court held that it should not for three reasons. The plain meaning of the statute "evidences the legislative intent to fix the only date of accrual...." *Id.* at 353; *see also Morano v. St. Francis Hosp.,* 100 *Misc.*2d 621, 420 *N.Y.S.*2d 92, 94–95 (App.Div.1979) (examining wrongful-death statute requiring that action "must be commenced within two years after decedent's death," and finding conclusion "inescapable that the clearly expressed intention of the Legislature ... was to provide that an action for wrongful death must be commenced within two years after the date of death"). Second, the judicially created discovery rule applies only to "accrual" limitation statutes, "i.e., statutes which have failed to define when a cause of action accrues." *Moreno, supra,* 787 *S.W.*2d at 353. Finally, "[t]he overwhelming majority of states construing absolute statutes with similar or identical language to that found in [the Texas statute] have held that the discovery rule does not apply." *Ibid.*

The Texas Supreme Court summarized its conclusion as follows:

The language used in [subpart (b) ] reflects a clear legislative intent to adopt an absolute two-year limitations period for wrongful death actions. The legislature could have either left "accrual" undefined in [that subpart] or could have stated that the cause of action accrues "on the death of the injured person or upon discovery of the cause of death"; either route would have allowed the discovery rule to be applied to [subpart (b) ]. Instead, the statute unambiguously specifies one event—death—and only that one event as the date upon which the action accrues. By specifying that date, the legislature has foreclosed judicial application of the discovery rule. If we concluded otherwise, we would be disregarding the plain meaning of [subpart (b) ], distorting the clear function of the discovery rule, frustrating the legitimate purposes of limitation statutes, and ignoring the well-reasoned opinions of most other jurisdictions.

[*Id.* at 354–55.]

Similarly, in Vermont, the wrongful-death statute read: "[S]uch action shall be brought in the name of the personal representative of such deceased person and commenced within two years from his decease." *Leo v. Hillman,* 164 *Vt.* 94, 665 *A.*2d 572, 575 (1995).

The Supreme Court of Vermont found that "[t]he statute is clear on its face and therefore requires no additional interpretation." *Ibid.; see also Cadieux v. International Tel. & Tel. Corp.,* 593 *F.*2d 142, 144 (1st Cir.1979) (considering Rhode Island statute commanding wrongful-death action "shall be commenced within two years after the death of such person" and finding that, although the term "accrued" leaves room for judicial interpretation, "[t]he directive that suit must be brought within two years of death leaves no such room"); *Anthony v. Koppers Co.,* 496 *Pa.* 119, 436 *A.*2d 181, 183–84 (1981) (plurality opinion) (examining statute requiring wrongful-death action "shall be brought within one year of death, and not thereafter" and finding the requirement that a wrongful death action be brought within one year after a "definitely established event,—'death'—leaves no room for construction"). The Vermont Court held that the wrongful-death statute "prescribes a limitation period that is necessarily determinable where facts are known and indisputable." *Leo, supra,* 665 *A.*2d at 575. When "accrues" appears in statutes of limitations, it implies "the need to ascertain a subsidiary fact in order to apply the limitations formula to a given provision." *Ibid.* In contrast, the date of accrual in a wrongful-death action under the Vermont statute "is a determinable fact, and the statutory language ... does not invite further inquiry." *Id.* at 575–76; *see also Trimper v. Porter–Hayden,* 305 *Md.* 31, 501 *A.*2d 446, 448–49 (1985) (considering wrongful-death statute mandating action "shall be filed within three years after the death of the injured person" and determining plain language precludes application of discovery rule "in the guise of statutory construction" because statute leaves "no room for judicial interpretation"); *Morano, supra,* 420 *N.Y.S.*2d at 95 (holding plain language of New York statute "leaves no room for judicial construction and there are no statutory spaces to be filled").

Those cases are but a few examples of those states that have employed the same or similar analyses to hold that equitable tolling principles, such as that embodied in the discovery rule, do not apply to their wrongful-death statutes. Other examples

abound. Many states follow the same rule as Texas and Vermont. *See, e.g., With v. General Elec. Co.*, 653 *P*.2d 764, 765 (Colo.Ct. App.1982) (finding that death provides notice of potential tort claim); *Miles v. Ashland Chem. Co.*, 261 *Ga.* 726, 410 *S.E.*2d 290, 291–92 (1991) (declining to extend discovery rule to statute of limitations by adopting discovery rule in wrongful-death cases); *Wyness v. Armstrong World Indus., Inc.*, 131 *Ill.*2d 403, 137 *Ill.Dec.* 623, 546 *N.E.*2d 568, 571 (1989) (stating that plaintiffs "ignore the plain language" of wrongful-death statute, which requires actions be filed within two years "after the death"); *Schultze v. Landmark Hotel Corp.*, 463 *N.W.*2d 47, 51 (Iowa 1990) (finding no "unjust unfairness" because plaintiff was put on notice as of date of death to determine whether wrongful act of defendants caused decedent's death); *Szlinis v. Moulded Fiber Glass Cos.*, 80 *Mich.App.* 55, 263 *N.W.*2d 282, 287 (1978) (finding three-year limitation period for wrongful-death action commences at death); *Hubbard v. Libi*, 229 *N.W.*2d 82, 84 (N.D.1975) (noting both individual litigant and society have interest in definite limitation period); *Eldridge v. Eastmoreland Gen. Hosp.*, 307 *Or.* 500, 769 *P*.2d 775, 776 (1989) (en banc) (holding "no matter what plaintiff knew or should have known," statute of limitations on plaintiff's wrongful-death action expired three years after decedent's death).

### B.

The decidedly minority view, favoring application of the equitable tolling principles embodied in the discovery rule despite the absence of accrual language in a wrongful-death statute, comes from only a handful of states. The decisions of those states are unpersuasive and distinguishable. Although all deal with wrongful-death statutes that explicitly set the time for the accrual of the action, none of the statutes does so as emphatically as does New Jersey. None has the additional emphatic language of "and not thereafter" contained in New Jersey's Act, which provides yet

another affirmative indication of the legislative intent to fix accrual at the date of death, irrespective of equitable principles.

Secondly, and more importantly, those decisions involving application of the discovery rule to a wrongful death act appear to me to exemplify judicial revision of legislative judgments. The retort to the assertion that judicial construction of a wrongful-death statute was essential to correcting the absurd or tragic result of timé-barring a tortfeasor whose conduct caused death, while extending through equitable tolling principles the time for holding accountable a tortfeasor whose conduct only caused injury, was made by the Supreme Court of Texas in *Moreno:*

[A]pplication of the discovery rule in personal injury cases is reasonable because the live plaintiff may either be unaware of an injury at the time of its occurrence, or in need of time to recover before beginning an investigation. Neither of these considerations, however, are present in wrongful death actions because survivors are put on immediate notice by the event of death that an investigation into the cause of action must occur to preserve the claim. This definitive notice is what differentiates wrongful death and survival actions from personal injury actions. By disallowing application of the discovery rule to [subpart (b) ], our opinion recognizes this distinction and effectuates the state interest in the prompt settlement of a decedent's affairs.

[*Moreno, supra,* 787 *S.W.*2d at 354 n. 6.]

That a legislative policy decision is debatable does not necessarily render that policy statement absurd or irrational. A legislature reasonably could distinguish a wrongful-death action from personal injury actions. Death itself is a significant discovery event. It generally signals to survivors "a starting point for inquiry regarding a cause of action for wrongful death." *Krueger v. St. Joseph's Hosp.,* 305 *N.W.*2d 18, 23 (N.D.1981). Death puts survivors on notice that they should take steps to determine the cause of death, and they "have the opportunity to proceed with scientific examinations aimed at determining the exact cause of death so that a wrongful death action, if warranted, can be filed without additional delay." *Pastierik v. Duquesne Light Co.,* 514 *Pa.* 517, 526 *A.*2d 323, 326 (1987). In the face of the unequivocal command of *N.J.S.A.* 2A:31–3, the remediation of any perceived policy inadequacies in the Act is the business of the Legislature. *Schultze, supra,* 463 *N.W.*2d at 51 (rejecting cases in the minority view as

"unsound authority because they are based on judicial discretion used to implement notions of fairness rather than giving effect to the priorities that the legislature has set forth in an express statutory provision").

Indeed, when faced with a perceived shortcoming in the application of our Act, the New Jersey Legislature has acted recently to correct an unfairness caused by the two-year limitations period of the statute. On October 5, 2000, both chambers of the New Jersey Legislature unanimously passed a bill that eliminated the two-year statute of limitations for a wrongful-death action when the decedent dies as a result of murder, aggravated manslaughter, or manslaughter. The bill was signed into law on November 17, 2000. *L.* 2000, *c.* 157. The Act now reads:

Every action brought under this chapter shall be commenced within 2 years after the death of the decedent, and not thereafter, provided, however, that if the death resulted from murder, aggravated manslaughter or manslaughter for which the defendant has been convicted, found not guilty by reason of insanity or adjudicated delinquent the action may be brought at any time.

This act shall take effect immediately and shall apply to any action filed on or after the effective date including actions filed where the murder, aggravated manslaughter or manslaughter occurred prior to the effective date of this act.

If it were appropriate to look beyond the plain language of the Act to discern the legislative understanding of the statute, one need look no farther than the Legislature's Statement in connection with the bill: "Under present law, an action for wrongful death must be brought within two years of the death of the decedent."

Thus, the Legislature already has acted to address fairness concerns in a murder or manslaughter set of circumstances, eviscerating the need for the Court to consider applying broad-based equitable tolling remedies. Furthermore, that the Legislature passed recent legislation eliminating the wrongful-death limitations period in the specific circumstances presented by a murder reveals the Legislature's perception that the statute of limitations for a wrongful-death action does not permit modification through equitable principles.

Principles of "fairness" and "justice" apply to defendants as well as plaintiffs. Plaintiffs in wrongful-death actions possess no monopoly on their invocation. Statutes of limitations embody competing equitable considerations. As this Court stated in *Lopez, supra*, 62 *N.J.* at 274, 300 *A.*2d 563, "[i]t may also be unjust ... to compel a person to defend a law suit long after the alleged injury has occurred.... After all, ... the principal consideration underlying ... [enactment of statutes of limitations] is one of fairness to the defendant."

This theme of bilateral justice was emphasized in strong dissents in two state supreme court cases that held that equitable tolling principles were applicable to a wrongful death statute. In a vigorous dissent in *Hanebuth v. Bell Helicopter International*, 694 *P.*2d 143, 148 (Alaska 1984) (Moore, J., dissenting), Justice Moore stated that the period of limitation in the wrongful-death statute "represents a legislative judgment that affords plaintiffs a reasonable time to present their claims, while protecting defendants and courts from the potential injustice of dealing with stale claims." *Ibid.* The court was wrong to "blithely interfere with the balance struck by the legislature." *Ibid.* The dissent reminded the court:

Application of a statute of limitation may often make it impossible to enforce a previously valid claim. However, the legislature unequivocally prescribed that a cause of action for wrongful death accrues on the date of death and we should enforce that mandate. Preclusion of a legal remedy alone does not justify a judicial exception to the statute. To engraft the discovery rule on [the statute] completely ignores the statutory directive.

[*Id.* at 149.]

Similar views are found in Chief Justice Moyer's dissent in the four-to-three decision in *Collins v. Sotka*, 81 *Ohio St.*3d 506, 692 *N.E.*2d 581, 586 (1998)(Moyer, C.J., dissenting). Stating that the judicial branch must temper its empathy and exercise restraint in those cases in which emotion tempts members of courts to expand the use of their judicial powers, the dissent suggested that "[t]he expansive holding adopted by the majority today could not be more illustrative of the harm effected upon our jurisprudence when the judiciary does not follow the principle that courts are ill

suited and not designed to substitute their policy judgment for that clearly stated by the legislature." *Ibid.*

Like the majority, I would acknowledge that application of the wrongful-death statute of limitations may occasionally be unfair. But, I do not believe that the remedy is to employ equitable notions of tolling developed to explicate ambiguous terms of "accrual." There is no ambiguity here to invite our judicial intervention. The Wrongful Death Act is clear and should be enforced. The duty of a self-restrained judiciary "is to give the words of the statute their plain and ordinary meaning unless otherwise defined." *Ibid.* Accordingly, I perceive no role for equitable tolling notions in the face of the New Jersey Legislature's apparent preference for the public policy of finality concerning a decedent's affairs. A plaintiff must bring a wrongful-death action within two years of the date certain of the decedent's death, and not thereafter.

### III.

The majority holds that the Wrongful Death Act may be equitably tolled for minors. Despite the clear and emphatic language of the limitation period governing wrongful-death actions, the majority rules that tolling principles should apply for minors until they reach their eighteenth birthday. Such a holding ignores the plain language of not only the Act, but also New Jersey's general infant tolling statute, *N.J.S.A.* 2A:14–21. *N.J.S.A.* 2A:14–21 provides:

If any person entitled to any of the actions or proceedings specified in sections 2A:14–1 to 2A:14–8 or sections 2A:14–16 to 2A:14–20 of this title or to a right or title of entry under section 2A:14–6 of this title is or shall be, at the time of any such cause of action or right or title accruing, under the age of [18] years, or insane, such person may commence such action or make such entry, within such time as limited by said sections, after his coming to or being of full age or of sane mind.

[*N.J.S.A.* 2A:14–21.]

The Legislature's specific delineation of causes of action for which infant tolling applies bespeaks deliberation; noticeably absent is any reference to a wrongful-death cause of action.

As a launching point for its consideration of whether wrongful-death claims should be tolled for minors, the majority notes that "[i]n *Negron,* we observed that equitable tolling or the discovery rule 'in appropriate circumstances ... can be relevant in determining whether the statute of limitations [*N.J.S.A.* 2A:31–3] should be tolled.' " *Ante* at 421, 766 *A.*2d at 1070. Examination of that dictum from *Negron v. Llarena,* 156 *N.J.* 296, 716 *A.*2d 1158 (1998), in its original context reveals, however, that the underpinnings for that statement in *Negron* are not present here. Stated in its entirety, the Court's decision in *Negron* observed that equitable tolling or application of the discovery rule

> *in appropriate circumstances, such as those presented by this case,* can be relevant in determining whether the statute of limitations should be tolled. *See, e.g., Galligan v. Westfield Centre Serv., Inc.,* 82 *N.J.* 188, 412 *A.*2d 122 (1980) (holding that the statute of limitations for a survivorship case would be equitably tolled by the *timely filing* of an action in federal court improperly based on diversity of citizenship jurisdiction); *Mitzner v. West Ridgelawn Cemetery, Inc.,* 311 *N.J.Super.* 233, 709 *A.*2d 825 (App.Div.1998) (applying *Galligan* ).
>
> [*Negron, supra,* 156 *N.J.* at 307, 716 *A.*2d 1158 (emphasis added).]

The definition of "appropriate circumstances" in *Negron* hinged on the timely filing of a complaint. In *Negron,* although there was a question whether strict or substantial compliance with the statute of limitations was required, plaintiff in any event had complied fundamentally with the statute by filing a complaint prior to the expiration of the two-year limitations period.

The cases the Court in *Negron* cited also define "appropriate circumstances" by reference to a complaint filed within the two-year limitation period set by the Act. In *Galligan, supra,* 82 *N.J.* at 190, 412 *A.*2d 122, the plaintiff filed a timely wrongful-death complaint in the Federal District Court of New Jersey, and, based on the absence of diversity, the defendants moved to dismiss for lack of subject matter jurisdiction. The plaintiff then filed the same cause of action in the Superior Court of New Jersey while the motion was pending, but twenty-two days after the statute of limitations had run. *Ibid.* The Court concluded that the second complaint should not be time barred because a timely, albeit jurisdictionally deficient, federal complaint had been filed. *Id.* at

195, 412 *A*.2d 122. *Galligan* thus "stands for the proposition that, where a timely action is dismissed by the federal court for lack of jurisdiction, the same action filed prior to the federal court dismissal, but brought out of time in state court, will not be dismissed when dismissal will not further the legislature's purpose of insuring repose." *Knight v. Brown Transp. Corp.*, 806 *F*.2d 479, 485 (3d Cir.1986); *see also Young v. Clantech, Inc.*, 863 *F*.2d 300, 301 (3d Cir.1988) (concluding that Court in *Galligan* held that "filing of a complaint in a court which lacks subject matter jurisdiction over the case will toll the New Jersey statute of limitations if, in the particular circumstances of the case, the purposes underlying the statute are not compromised"); *Byrd v. Manning*, 253 *N.J.Super.* 307, 314, 601 *A*.2d 770 (App.Div.1992) (concluding that statute of limitations in the Act could not be tolled because, "in sharp contrast to *Galligan*, both complaints filed by plaintiff were filed beyond the two-year statutory period . . ."). *Negron* simply does not support the expansive application of equitable principles to a wrongful-death action that the majority ascribes to it.

To this point New Jersey case law has rejected the application of equitable tolling principles to wrongful-death actions brought on behalf of minors. The courts have considered the fact that the Act specifically sets forth a two-year limitation period and does not provide for minority tolling within its provisions. *See, e.g., Lombardi v. Simon*, 266 *N.J.Super.* 708, 712, 630 *A*.2d 426 (Law Div.1993) (refusing to toll wrongful-death statute of limitations); *Cockinos v. GAF Corp.*, 259 *N.J.Super.* 204, 208, 611 *A*.2d 1154 (Law Div.1992) (holding that infant tolling does not apply to wrongful-death actions because statute does not include minority tolling provision).

The New Jersey Legislature, unlike other state legislatures, has not amended the Act to provide tolling for infants. *See, e.g., Ill. Comp. Stat. Ann.* 18012 (West 2000) ("Every such action shall be commenced within 2 years after the death * * *. However, if [an omitted person] is, at the time the cause of action accrued, within

the age of 18 years, he or she may cause such action to be brought within 2 years after attainment of the age of 18"); *see also Taylor v. Black & Decker Mfg. Co.,* 21 *Ohio App.*3d 186, 486 *N.E.*2d 1173, 1177 (1984) (concluding that if legislature intended to change wrongful-death statute of limitations "which requires that a cause of action be brought within two years after decedent's death, it would have amended the wrongful death statute so as to provide for such a change").

Notwithstanding those formidable impediments to its reasoning, the Court finds support for its conclusion concerning infant tolling in the Appellate Division's decision in *Barbaria v. Sayreville,* 191 *N.J.Super.* 395, 404, 467 *A.*2d 259 (App.Div.1983). The majority states that the *Barbaria* court "reasoned that the death of a parent was essentially an injury to the child, much like a child's own physical injury, and therefore the child's wrongful death claim should be tolled, in the same way that his or her injury would be tolled under *N.J.S.A.* 2A:14–2 [the general statute of limitations for wrongful acts]." *Ante* at 427, 766 *A.*2d at 1073. But, reliance on *Barbaria* is misplaced. In fact, the Appellate Division in *Barbaria* declined to address the issue of whether the infant tolling statute applied to wrongful-death actions. *Barbaria, supra,* 191 *N.J.Super.* at 403, 467 *A.*2d 259 ("The only issue before us is the timeliness of the claim under the New Jersey Tort Claims Act.").

Moreover, the seeming acceptance of the *Barbaria* court's broad language is at odds with the Court's view of the next-of-kin's status as stated in *Giardina v. Bennett,* 111 *N.J.* 412, 545 *A.*2d 139 (1988). In *Giardina,* the Court unequivocally concluded that a wrongful-death action is not an opportunity for next-of-kin to be compensated for injuries suffered to themselves. *Id.* at 423–24, 545 *A.*2d 139. The Court specifically stated that the wrongful-death action is "based on the harm done to the decedent, and is thus differentiated from personal injury actions brought by . . . survivors resulting from injuries they directly suffered due to the wrongful death." *Ibid.*

New Jersey courts historically have held that exceptions may not be made for minors when the statutory language itself is silent. *See, e.g., Uscienski v. National Sugar Ref. Co.,* 19 *N.J. Misc.* 240, 242, 18 *A.*2d 611 (1941) (finding that no exception can be claimed in favor of minors in a statutory provision limiting the time for commencing actions given by such statute, unless they are expressly mentioned by statute as excepted). More recently in *Cockinos, supra,* 259 *N.J.Super.* at 206–07, 611 *A.*2d 1154, the Appellate Division held that application of the equitable principles of infant tolling would be contrary to the clear terms of the Wrongful Death Act. Further, the Appellate Division stated, "The factor which distinguishes *Barbaria* from the [wrongful death] case *sub judice* is that the Legislature provided a specific extension for filing on behalf of infants in the Torts Claim Act." *Id.* at 208, 611 *A.*2d 1154.

The Act's statute of limitations provides no exception for minors, nor a savings clause. Many other jurisdictions have ruled that a statute's omission of an express exception for infants or a savings clause must be enforced as the will of the legislature. *See, e.g., Nicholson v. Lockwood Greene Eng'rs, Inc.,* 278 *Ala.* 497, 179 *So.*2d 76, 79 (1965) (holding in absence of savings clause minority status of plaintiff does not toll operation of statute of limitations); *Group Health Ass'n v. Gatlin,* 463 *A.*2d 700, 701 (D.C.1983) (holding statute could not be clearer; statute states plainly that action thereunder must be brought within one year); *Arender v. Smith County Hosp.,* 431 *So.*2d 491, 492 (Miss.1983) (holding relief from provisions of statute of limitations on account of disability will not be granted unless statute contains savings clause); *Short v. Flynn,* 118 *R.I.* 441, 374 *A.*2d 787, 789 (1977) (holding statute's two-year limitation period not tolled; statute did not provide for exception to running of limitation period).

If the New Jersey Legislature intended the Act's statute of limitations to toll on the account of minors, it would have so provided for this statutorily created cause of action. It easily could have included the Wrongful Death Act as among those

actions added to the infant tolling statute by the 1951 amendment to that provision. The Legislature was on notice that no tolling for minors was being applied in wrongful-death actions or other actions unless the minors were specifically made exempt. See *Uscienski, supra,* 19 *N.J. Misc.* at 242, 18 *A.*2d 611 (stating that statute that contains savings clause in favor of infants "in any of the personal actions before mentioned" applies only to actions mentioned in such statutes). Or, the Legislature could have acted to remedy the problem of tolling for minors when in 2000 that body addressed a different perceived injustice concerning the Act and instances of murder or manslaughter. The Legislature did not and the Act's unambiguous terms leave no room for judicial construction engrafting a tolling provision for minors where there is none.

Furthermore, the legislative choice on this matter is entirely reasonable. Under the Act, an infant may not bring an action:

Every action commenced under this chapter shall be brought in the name of an administrator ad prosequendum of the decedent for whose death damages are sought, except where decedent dies testate and his will is probated, in which event the executor named in the will and qualifying, or the administrator with the will annexed, as the case may be, shall bring the action.

[*N.J.S.A.* 2A:3–2.]

Because the minor children may not bring an action under the Act, the limitation period need not be subjected to a judicially devised tolling. An administrator brings the action on behalf of the minor; it is not the case that a minor is burdened with an unrealistic obligation to file his or her claim at an early age. *Gomez v. Leverton,* 19 *Ariz.App.* 604, 509 *P.*2d 735, 737–38 (1973) (finding decedent's children merely beneficiaries of wrongful-death action, thus tolling statute does not apply); *Fanio v. John W. Breslin Co.,* 51 *Ill.*2d 366, 282 *N.E.*2d 443, 444 (1972) (stating that because plaintiff administrator, as party imposed with burden of bringing action, is not minor, reasons inherent in removing minors from scope of limitation requirement are totally lacking). For similar reasons, see *Beverage v. Harvey,* 602 *F.*2d 657 (4th Cir. 1979); *Hemingway v. Shull,* 286 *F.Supp.* 243 (D.S.C.1968); *Hunt-*

*ington v. Samaritan Hosp.*, 101 *Wash.*2d 466, 680 *P.*2d 58 (1984) (en banc).

## IV.

To buttress the argument for applying equitable tolling doctrines and infant tolling to the Act, the Court today adopts the historical analysis of wrongful-death actions in Justice Handler's concurrence in *Negron, supra*, 156 *N.J.* at 307–20, 716 *A.*2d 1158. The majority now holds that such an action existed at common law. Through that holding, the majority seemingly maintains that the Court would be free of any need to defer to legislative restrictions on the bringing of such actions. Thus, the employment of equitable notions to this statutory cause of action is legitimized.

The Court's ruling has New Jersey deviate from the near-universal acceptance of "the rule that a civil action for wrongful death was not recognized at common law, and that no such cause of action may be maintained except under the terms and authority of a statute." W.E. Shipley, Annotation, *Modern Status of Rule Denying a Common Law Recovery for Wrongful Death*, 61 *A.L.R.*3d 906, 909 (1975). Until today, this Court has never exhibited any inclination but to adhere to the settled law of this State that no action for wrongful death existed at common law. Justice Handler's concurrence in *Negron* acknowledges as much. In the nineteenth century, the Court of Errors and Appeals adopted the reasoning of *Grosso v. Delaware, Lackawanna & Western Railroad Co.*, 50 *N.J.L.* 317, 13 *A.* 233 (Sup.Ct.1888), and determined that ever since *Grosso*, "it has been considered as settled law in this state that no action will lie for injury caused by the death of a human being" other than those brought pursuant to the Wrongful Death Act. *Myers v. Holborn*, 58 *N.J.L.* 193, 195–96, 33 *A.* 389 (1895).

Since 1888, therefore, New Jersey courts have followed an unwavering course:

[New Jersey cases subsequent to *Myers* ] accepted the *Grosso* logic and conclusion as the settled state of the law. *See, e.g., Consolidated Traction Co. v. Hone,* 60 *N.J.L.* 444, 38 *A.* 759 (E. & A. 1897); *Callaghan v. Lake Hopatcong Ice Co.,* 69 *N.J.L.* 100, 54 *A.* 223 (Sup.Ct.1903). That has been carried through in modern cases as well. *Turon v. J. & L. Constr. Co.,* 8 *N.J.* 543, 556, 86 *A.*2d 192 (1952); *Schmoll v. Creecy,* 54 *N.J.* 194, 197, 254 *A.*2d 525 (1969); *Alfone v. Sarno,* 87 *N.J.* 99, 104, 432 *A.*2d 857 (1981).

[*Negron, supra,* 156 *N.J.* at 317, 716 *A.*2d 1158 (Handler, J., concurring).]

Exactly one-hundred years later in 1988, this Court left no doubt that wrongful-death actions "were unrecognized at common law" and that "New Jersey fully adopted this common-law rule." *Giardina, supra,* 111 *N.J.* at 422, 545 *A.*2d 139. The legislative purpose behind the Wrongful Death Act *"clearly* embraces the intent to create an entirely new and distinctive cause of action where none existed before." *Id.* at 424, 545 *A.*2d 139 (emphasis added); *see also Schmoll, supra,* 54 *N.J.* at 197, 254 *A.*2d 525 ("The wrongful death action was unknown to the common law and hence is the creature of statute."). In finding that an unborn fetus is not a "person" within the meaning of the Wrongful Death Act, the *Giardina* Court relied, in large part, on the history underlying the development of wrongful-death actions. *Giardina, supra,* 111 *N.J.* at 422, 545 *A.*2d 139 (interpreting narrowly term "person" because of "distinctive statutory nature" of wrongful-death action, "historical origins of the statute," and later "history and evolution" of Act).

Therefore, since 1888 an unbroken line of precedent has recognized the absence of a common-law cause of action for wrongful death in New Jersey. That long line of cases and the overwhelming weight of authority throughout the nation militate against the Court's rejection of precedent. Moreover, even if a common-law action for wrongful death existed in New Jersey, that fact is of no moment for an absolute statute such as our Act. The Legislature is free to expand, modify, or abrogate common law as it may reasonably determine. The *Giardina* Court recognized that the framers of the Wrongful Death Act "intended to 'occupy the field' " with respect to wrongful-death actions. *Id.* at 424, 545 *A.*2d 139. The course of subsequent legislative amendments to

the Act both confirms the legislative intent to create an entirely new cause of action for wrongful death and reflects the legislative intent "to control the scope of the statute and nature of this remedy." *Ibid.* A newly minted common-law cause of action might be of historical interest, but would carry no interpretive import.

That lack of interpretive significance is evident from actions of two courts to which the majority refers. The majority seeks support in *Gaudette v. Webb*, 362 *Mass.* 60, 284 *N.E.*2d 222 (1972), in which the Massachusetts Supreme Judicial Court, which recognized a common-law wrongful death action, held that the statute of limitations for wrongful death could be tolled by the infant-tolling provision in the Massachusetts code. The majority also looks to *Moragne v. States Marine Lines, Inc.*, 398 *U.S.* 375, 90 *S.Ct.* 1772, 26 *L.Ed.*2d 339 (1970), in which the United States Supreme Court concluded in the maritime context that the common law recognizes recovery for wrongful death. However, subsequent decisions from those courts conflict with the argument that recognizing a common-law wrongful death action supports the application of equitable tolling principles. As Justice Handler duly mentioned in *Negron*, although *Moragne* and *Gaudette* remain sound law, "[b]oth the United States Supreme Court and the Massachusetts Supreme Judicial Court have since put limits on the causes of action recognized in *Moragne* and *Gaudette*, respectively." *Negron, supra*, 156 *N.J.* at 314 n. 2, 716 *A.*2d 1158 (Handler, J., concurring).

In *Pobieglo v. Monsanto Co.*, 402 *Mass.* 112, 521 *N.E.*2d 728, 730 (1988), the Massachusetts Supreme Judicial Court held that the equitable tolling principle of the discovery rule may not be applied to the statute of limitations for claims under the wrongful-death statute, which provided that a claim for wrongful death must be brought within "three years from the date of death." The court stated unequivocally:

Here it is of no significance that the wrongful death claim has common law origins, since we are first concerned with the meaning of the [wrongful death statute], which limits the right to bring such claims. Only if the statute is ambiguous, or

couched in terms that suggest that we do so, do we look beyond the express statutory language.

[*Id.* at 731.]

The court continued:

The Legislature has unambiguously stated that a claim for wrongful death must be brought within "three years from the date of death." Application of a rule which would delay accrual until discovery would be in clear contravention of the legislative directive that the period of limitation runs from the date of death. Furthermore, it must be understood that the discovery rule grew out of the need to determine when a cause of action "accrued." When the Legislature limits the time within which suit can commence from the date of accrual, it leaves to the court the determination of the precise meaning of the term accrued.

[*Ibid.*]

That court reiterated that " '*Gaudette* does not stand for the proposition that the requirements of the statute may be disregarded.' " *Ibid.* (quoting *Hallett v. Town of Wrentham*, 398 *Mass.* 550, 499 *N.E.*2d 1189, 1192 (1986)). The wrongful-death claim may be of common-law origin, but the statute still specifies the recovery and procedure. *Pobieglo, supra,* 521 *N.E.*2d at 731. The Legislature might reasonably choose to put a wrongful-death claimant on different footing from one claiming injury, and it cannot be said that such a result is absurd or illogical. *Id.* at 731–32. Although arguments regarding hardship are appropriate in relation to the enactment of legislation, such arguments are noncontrolling when interpreting existing statutes. *Id.* at 732. Thus, the Massachusetts Supreme Judicial Court held that, the common-law background of wrongful-death actions notwithstanding, when the Legislature "has specifically provided that claims for wrongful death must be brought within three years from the date of death, it would be inappropriate for this court to vitiate that legislative determination and apply a discovery rule to claims brought pursuant to [the wrongful death statute]." *Ibid.; see also Ratka v. St. Francis Hosp.,* 44 *N.Y.*2d 604, 407 *N.Y.S.*2d 458, 378 *N.E.*2d 1027, 1032 (1978) (holding statutory entitlement to wrongful-death action in New York renders it "neither necessary nor appropriate to change established law as a means of saving [a] cause of action for wrongful death from the bar of the Statute of Limitations").

A later decision of the United States Supreme Court also contradicts the expansive support the majority finds in *Moragne*. In *Mobil Oil Corp. v. Higginbotham*, 436 *U.S.* 618, 98 *S.Ct.* 2010, 56 *L.Ed.*2d 581 (1978), the Supreme Court stated:

In *Moragne*, the Court recognized a wrongful-death remedy that supplements federal statutory remedies. But that holding depended on our conclusion that Congress withheld a statutory remedy in coastal waters in order to encourage and preserve supplemental remedies.... There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted. In the area covered by statute, it would be no more appropriate to prescribe a different measure of damages *than to prescribe a different statute of limitations,* or a different class of beneficiaries.... [W]e have no authority to substitute our views for those expressed by Congress in a duly enacted statute.

[*Id.* at 625–26, 98 *S.Ct.* at 2015, 56 *L.Ed.*2d at 587 (emphasis added).]

See also *Miles v. Apex Marine Corp.*, 498 *U.S.* 19, 27, 111 *S.Ct.* 317, 323, 112 *L.Ed.*2d 275, 287 (1990) ("Congress retains superior authority in these matters, and an admiralty court must be vigilant not to overstep the well-considered boundaries imposed by federal legislation. These statutes both direct and delimit our actions.").

Similarly, the court in *Holzsager v. Warburton*, 452 *F.Supp.* 1267 (D.N.J.1978), found that there was no common-law right of action for wrongful death in New Jersey, but stated that the extended discussion of this alleged historical error was immaterial in any event:

Since the States supposedly labored under an erroneous view of the common law, they created remedies by statute. Thus, even if it be said now that there really was an action at common law (which no one knew), the statutes replace it, and so the result at the State level is the same either way.

[*Id.* at 1272 n. 4.]

The court continued:

Whether they create new actions or modify existing ones, legislatures have the authority to specify conditions and prerequisites that must be satisfied, as essential ingredients of the cause of action. Whatever freedom courts have to modify decisional law, the equal status of these two branches of government acts as a restraint—a check and balance—on what one or the other might do alone.

[*Id.* at 1272 n. 5.]

Common-law action or not, the analysis remains the same, according to the very courts cited for the proposition that the common law allowed a wrongful-death cause of action. The strength of the majority's position is not advanced by a pronouncement of the existence of a wrongful-death action at common law.

As previously noted, many jurisdictions have rejected the approach that a common-law wrongful death action did exist. Those courts have adhered to the view that the wrongful-death cause of action is statutorily created and best left to the Legislature to decide the preconditions of its existence. *Nicholson, supra*, 179 *So.*2d at 78–79 (concluding that statutorily created cause of action is fixed in Wrongful Death Act; limitation goes to essence of right, affecting liability itself, not merely remedy); *Sandusky v. First Elec. Coop.*, 266 *Ark.* 588, 587 *S.W.*2d 37, 38 (1979) (finding it well established in Arkansas that right of action for wrongful death of statutory origin only because no such cause of action existed at common law; therefore limitation time fixed by wrongful death statute is limitation on right of action and thus essential element of right to sue); *Taylor, supra*, 486 *N.E.*2d at 1177; *Short, supra*, 374 *A.*2d at 789 ("We are not persuaded by the Massachusetts court's resort to the device of creating a common law right of action as a means of supplying a remedy for otherwise remediless minors.").

Similarly here, the pronouncement of a common-law wrongful death action does not bolster the majority's determination that deviates from the plain language of the Act. The Act's language does not compel a result that is absurd or illogical. In my view, the majority's holding, altering a considered choice of the Legislature on a matter of policy, is compelled by a premise that the Court's resolution is one which produces a "fairer" or more "just" result than the Act's plain terms. But, the Act is unambiguous and emphatic in its terms, thus we need delve no further than the statutory words to understand the legislative intent and then give it effect. *See State v. Butler*, 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982) (observing that where "statute is clear and unambiguous on its

face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent").

## V.

I respect the majority's motives but reject its action in sustaining the cause of action on behalf of the infants in this case. Unfortunately, plaintiff brought a wrongful-death action outside the time limits allowed by the Act. The Court should not strain to import equitable tolling principles, specifically infant tolling, into a setting where the Legislature has left no room for such adjustments in order to breathe life into plaintiff's time-barred action. The majority's opinion contravenes basic tenets of statutory construction and the cardinal rule that a court should accord respect and deference to the considered judgments of other branches of government when they act within their designated spheres of authority. Because the Legislature has made its choice concerning when and how a statutory wrongful-death action may be brought, I would leave any correction of those parameters to the will of that body. Therefore, I respectfully dissent.

Justice VERNIERO joins in this opinion.

STEIN, J., concurring

I join in the Court's disposition of this appeal and in its thoughtful and persuasive opinion. I do not, however, join in Part III of the opinion recognizing a common-law cause of action for wrongful death because, in my view, we need not address or resolve that issue to decide this appeal.

*For affirmance as modified*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG and ZAZZALI—5.

*Concurring in part/Dissenting in part*—Justices VERNIERO and LaVECCHIA—2.